# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1117

_____

Pedro Garcia-Colindres; Brenda Maribel Garcia; Sergio Geovani Garcia Cano

*Petitioner*s

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 30, 2012
Filed: November 30, 2012

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Pedro Garcia-Colindres, a native of Guatemala in the United States illegally with his wife and son, seeks review of the Board of Immigration Appeal's (BIA) order affirming an immigration judge's (IJ) denial of his application for asylum and withholding of removal. For the reasons discussed below, we deny the petition for review.

I

Pedro Garcia-Colindres was born in Escuintla, Guatemala in 1953, where he remained with his wife and five children until 1993. In April of 1993, members of Guatemala's National Civilian Police (PNC) came to Garcia-Colindres's home on the suspicion that his teenage son Pedro was hiding weapons for a guerilla group. Thirty to forty men forcibly entered Garcia-Colindres's home, woke his sleeping children, and ransacked the house in search of weapons; none were found. Because Pedro was not home at the time, the men took Garcia-Colindres into custody in his place. Garcia-Colindres was transported to a police station where he was handcuffed, beaten, and burned with a cigarette for approximately eight hours. Before they released him, Garcia-Colindres's interrogators told him if Pedro did not reappear, they would hold his family responsible and kill Garcia-Colindres instead. Pedro has not been seen or heard from since that day.

Garcia-Colindres did not return to his residence after the interrogation and went instead to stay with friends. Over the following months, however, the PNC returned to search his home several times and indicated they would continue to do so. As a result, Garcia-Colindres hid his family in Guatemala and fled to the United States. Two years later, Garcia-Colindres's second son Enio was found in a sugarcane field with acid burns covering his face and body. He died shortly thereafter. Because this method of torture was characteristic of the PNC, Garcia-Colindres suspects the group was responsible for his son's death. Garcia-Colindres's wife left Guatemala for the United States a few months later. Their two youngest children joined them in 2004.

Garcia-Colindres's eldest daughter Lucy remained in Guatemala with her husband. From Guatemala, Lucy attempted to assist her family in the United States by gathering documentation and records in support of their application for asylum. During this time, Lucy informed her family that she was being followed by armed men. She reported her concerns to an investigator, but in 2007, Lucy was found dead

from at least nine gunshot wounds. The investigative report that followed listed her assailant as "unknown."

Garcia-Colindres believes the PNC is responsible for the disappearance and deaths of his children who remained in Guatemala. He filed an initial application for asylum in 1994, shortly after he arrived in the United States. On September 24, 2005, the government commenced removal proceedings against him. Garcia-Colindres submitted an updated application for asylum in 2006 on behalf of himself, his wife, their son, and their daughter (now deceased). The application was also considered to be a request for withholding of removal.

On January 20, 2008, an IJ denied Garcia-Colindres's applications for asylum and withholding of removal. Although the court found Garcia-Colindres credible, it determined he could not demonstrate past persecution or a well-founded fear of future persecution and, in any event, the changed conditions in Guatemala's political climate rendered his apprehensions objectively unreasonable. Accordingly, the IJ ordered Garcia-Colindres and his family to be removed to Guatemala. Garcia-Colindres appealed the decision to the BIA, which affirmed the IJ's decision. Garcia-Colindres filed this petition for review on January 18, 2012.

II

"Any alien who is physically present in the United States . . . may apply for asylum . . . ." 8 U.S.C. § 1158(a)(1). To qualify for asylum, an alien shoulders the burden of establishing he is a refugee, as that term is defined in 8 U.S.C. § 1101(a)(42). Id. § 1158(b)(1). Under § 1101(a)(42)(A), a refugee includes "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political

opinion."  Thus, an alien petitioning for asylum must prove past persecution or a well-founded fear of future persecution due to one of the bases enumerated in the statute.  8 C.F.R. § 1208.13(a).  Even where past persecution is shown, an IJ must deny asylum when a preponderance of the evidence shows "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality."  Id. § 1208.13(b)(1)(i)(A).

Here, the BIA affirmed the IJ's findings that Garcia-Colindres did not suffer past persecution and, due to changed circumstances in Guatemala, does not suffer a well-founded fear of future persecution.  Garcia-Colindres challenges those findings. "Because the BIA's decision is the final decision of the agency, it is the subject of our review."  Falaja v. Gonzales, 406 F.3d 1076, 1081 (8th Cir. 2005) (citing Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005)).  "To the extent, however, that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action."  Id.  We review the BIA's determination that Garcia-Colindres is ineligible for asylum or withholding of removal under the substantial evidence standard.  Ismail, 396 F.3d at 974.  Under this standard of review, we will affirm the denial of the withholding unless no reasonable factfinder could fail to find the requisite fear of persecution.  Id.  (internal citation and quotation marks omitted).

### III

We first address Garcia-Colindres's challenges to the IJ's findings that he did not suffer past persecution on account of a protected status and that he cannot establish a well-founded fear of future persecution.  This Court has described persecution as "the infliction or threat of death, torture, or injury to one's person or freedom, on account of [a protected ground]."  Malonga v. Mukasey, 546 F.3d 546, 552 (8th Cir. 2008) (citation omitted).  Persecution is "an extreme concept and does

-4-

not include low-level intimidation and harassment." Id. (citation omitted). An alien who establishes past persecution is entitled to a presumption that he has a well-founded fear of future persecution if removed to his country of origin. 8 C.F.R. § 208.13(b)(1).

## A. Past Persecution

Although the IJ found Garcia-Colindres's testimony credible, he concluded the harm Garcia-Colindres suffered in Guatemala did not rise to the level of past persecution. In declining to characterize Garcia-Colindres's detention by the PNC as persecution, the IJ relied upon this Court's collective holdings that "brief periods of detention, ethnic conflict, or isolated violence do not necessarily constitute persecution." Pet'r's App. 42 (citing Ngure v. Ashcroft, 367 F.3d 975, 990 (8th Cir. 2004) ("Generally speaking, evidence of isolated violence does not compel a finding of persecution."); Al Tawm v. Ashcroft, 363 F.3d 740, 743 (8th Cir. 2004) (noting that some physical harm or brief detention is not necessarily persecution); Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004) (holding that minor beatings and brief detentions do not necessarily rise to the level of persecution); Feleke v. I.N.S., 118 F.3d 594 (8th Cir. 1997) (holding that political unrest and ethnic conflict do not compel a finding of persecution)).

Because Garcia-Colindres was subjected to brief detention, minor beatings, and the threat of future violence, it bears mention that this case involves a combination of elements which may not individually amount to persecution. Even in the aggregate, however, we must agree that the harm suffered by Garcia-Colindres during his eight-hour detention was less severe than that suffered by those whose claims we have routinely rejected. We thus affirm the BIA's holding that the physical harm and brief detention inflicted by the PNC did not rise to the level of past persecution.

With regard to the terrible fates of Garcia-Colindres's children, the IJ likewise concluded Garcia-Colindres could not demonstrate past persecution as the unknown circumstances surrounding their deaths could not conclusively establish governmental involvement or indifference. "The BIA has adopted, and we have approved as reasonable, a definition of 'persecution' that requires a harm to be inflicted either by the government of [a country] or by persons or an organization that the government was unable or unwilling to control." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (citation and internal quotation marks omitted). This standard makes critical the identity and motives of one's persecutors. See Menendez-Donis v. Ashcroft, 360 F.3d 915, 919 (8th Cir. 2004) (affirming the BIA's denial of asylum for a petitioner who could not identify her attackers or the motives for their attacks and whose son was killed under unknown circumstances). Here, we are presented with a complete absence of evidence as to the individuals and motives behind the deaths and disappearance of Garcia-Colindres's children. Without more, we simply cannot conclude Pedro, Enio, and Lucy were not the casualties of general civil unrest, crime, or societal violence. Accordingly, we must affirm the BIA's holding that these incidents also did not constitute past persecution on account of a protected ground.

## B. Well-founded Fear of Future Persecution

Because Garcia-Colindres has not made a showing of past persecution, the presumption of a well-founded fear of future persecution does not apply. 8 C.F.R. § 1208.13(B)(1). To qualify for asylum, Garcia-Colindres must therefore demonstrate a subjectively genuine and objectively reasonable fear of future persecution on account of a protected ground. See Pavlovich v. Gonzales, 476 F.3d 613, 618 (8th Cir. 2007). While we do not question Garcia-Colindres's subjective fear of returning to Guatemala, the objective reasonableness of fearing future persecution on account of a protected ground is considerably weakened by the changed conditions in Guatemala in the nearly twenty years since his departure. See Regalado-Garcia v. I.N.S., 305 F.3d 784, 788 (8th Cir. 2002) (finding a petitioner's objective fear of future

persecution is undermined by changed country conditions). We have had many opportunities to consider and accept reports of dramatically improved conditions in Guatemala since the government and guerillas signed peace accords in 1996. See, e.g., Lorenzo-Gonzales v. Gonzales, 419 F.3d 754, 756 (8th Cir. 2005); Melencio-Saquil v. Ashcroft, 337 F.3d 983, 986, 988 (8th Cir. 2003). Given these developments and Garcia-Colindres's inability to demonstrate that his children's deaths and disappearance were attributable to his political opinion or affiliation, Garcia-Colindres's fear of future persecution rests on one eight-hour period of detention, committed approximately twenty years ago by a group that has since fallen from power. We must therefore agree with the BIA's conclusion that Garcia-Colindres cannot establish a well-founded fear of future persecution on a protected ground if returned to Guatemala. See Feleke, 118 F.3d at 598 ("Even attacks on family members, absent a pattern of persecution tied to the applicant, do not establish a well-founded fear of persecution; nor do isolated acts of violence."). Accordingly, the BIA's conclusion that Garcia-Colindres does not qualify as a refugee and is ineligible for asylum is supported by substantial evidence.

## C. Withholding of Removal

When an alien is not entitled to asylum, removal must be withheld if he or she shows a "clear probability" of future persecution on account of a protected ground. Ngure, 367 F.3d at 989. This is "a more rigorous standard than the well-founded fear of persecution that makes one eligible for asylum." Rife v. Ashcroft, 374 F.3d 606, 613 (8th Cir. 2004). Because substantial evidence supports the BIA's finding that Garcia-Colindres has not demonstrated a well-founded fear of future persecution, substantial evidence likewise supports the BIA's determination that he cannot establish a clear probability of future persecution. Garcia-Colindres is thus ineligible for withholding of removal.

### D. Humanitarian Asylum

Garcia-Colindres's final argument is that even if he does not have a well-founded fear of future persecution, he may nevertheless qualify for humanitarian asylum. See 8 C.F.R. § 1208.13(b)(1)(iii). Garcia-Colindres did not assert this claim before the IJ or the BIA and raises it for the first time in his petition for review. "Failure to raise an issue before the agency constitutes a failure to exhaust administrative remedies and deprives this court of jurisdiction to hear the matter." Ixtlilco-Morales v. Keisler, 507 F.3d 651, 656 (8th Cir. 2007) (quoting Sultani v. Gonzales, 455 F.3d 878, 884 (8th Cir. 2006)); see also 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if (1) the alien has exhausted all administrative remedies available to the alien as of right . . . ."). We therefore will not consider this claim.

### IV

For the foregoing reasons, we deny the petition for review.

_____