# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3725

_____

Simon Tebyasa,                        *
                                      *
            Petitioner,               *
                                      *   Petition for Review of an Order
      v.                              *   of the Board of Immigration Appeals.
                                      *
Eric H. Holder, Jr., Attorney General,*
of the United States,                 *
                                      *
            Respondent.               *

_____

Submitted:  December 15, 2009
Filed:  February 1, 2010

_____

Before LOKEN, Chief Judge, ARNOLD and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Simon Sebulime Tebyasa, a native and citizen of Uganda, entered the United States in May 2004, overstayed his student visa, and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). After an evidentiary hearing at which only Tebyasa testified, the Immigration Judge ("IJ") denied all relief, finding that his testimony was not sufficiently credible to meet his burdens of proof. Tebyasa appealed. The Board of Immigration Appeals ("BIA") affirmed with an opinion. Tebyasa filed a petition for judicial review and then a motion to remand. We deny the petition for review because substantial evidence supports the BIA's decision. We also deny the motion to remand.

## I. The Motion to Remand.

The motion to remand is based upon the following facts, which are not otherwise part of the administrative record. Tebyasa's first wife died in Uganda in November 2006, one month before the IJ's adverse decision. Tebyasa married a United States citizen in November 2008, one month after the BIA entered its final order of removal, and two days before he petitioned this court for judicial review of that order. In January 2009, Tebyasa's new wife filed an I-130 immigrant visa petition. A local office of the Department of Homeland Security ("DHS") approved the I-130 petition in September 2009. Tebyasa then moved this court to remand to the BIA "with further instructions that removal proceedings be reopened and remanded to the [IJ] for . . . determination of Petitioner's Application for Adjustment of Status." We were advised at oral argument that Tebyasa now has pending before the BIA a motion to reopen the removal proceedings. We conclude the motion to remand is contrary to applicable law.

An alien may petition for adjustment of status based on marriage to a U.S. citizen. 8 U.S.C. § 1255(e)(1) & (2). If he marries after removal proceedings begin, he may obtain adjustment of status only if he establishes "by clear and convincing evidence . . . that the marriage was entered into in good faith," and not to avoid the immigration laws. 8 U.S.C. § 1255(e)(3). An approved I-130 petition is "primary evidence" of a bona fide marriage. 8 C.F.R. § 1245.1(c)(8)(v).

If the BIA has issued a final order of removal, the petitioner wishing to obtain adjustment of status must file a motion to reopen with the BIA, whether or not a petition for judicial review of the removal order is pending. 8 C.F.R. § 1003.2. A motion to reopen must be filed within ninety days of the removal order. 8 U.S.C. § 1229a(c)(7)(C)(i). The BIA will grant a motion to reopen on this ground only if an I-130 petition has been approved. Because DHS may take more than ninety days to approve an I-130 petition, the BIA created a narrow exception to this rule if "the

unadjudicated visa petition was filed while the alien's appeal of the removal order was pending before the BIA." Miah v. Mukasey, 519 F.3d 784, 789 (8th Cir. 2008).

Tebyasa's motion to remand seeks to invoke this exception. However, it does not apply. The BIA issued its final order in October 2008. Thus, Tebyasa's motion to reopen now pending before the BIA was untimely. It may be that the agency has discretion to grant that untimely motion *sua sponte*. See 8 C.F.R. § 1003.2(a). But untimely motions to reopen are disfavored. Zine v. Mukasey, 517 F.3d 535, 542 (8th Cir. 2008). We decline to direct the agency to take up Tebyasa's untimely motion. Instead, we turn to the petition for review that is properly before us.

## II. The Petition for Review.

Tebyasa claims that he is eligible for asylum and withholding of removal because he has suffered past persecution and has a well-founded fear of future persecution on account of protected grounds, namely, his membership in a particular social group and his political opinion. See 8 U.S.C. § 1101(a)(42). He testified that he was a member of the Ugandan Young Democrats ("UYD"), a youth wing of the opposition Democratic Party, and attended a rally in May 2000 to protest the ruling party's scheduling of a referendum. On June 27, 2000, he suffered a hand injury and a broken tooth resisting government security operatives who took him forcibly from his home to an unknown location, where he was questioned about his political involvement, beaten on the ankles with batons, and forced to stand in buckets of ice water. The detention lasted three days until his wife paid a bribe to someone in the Directorate of Military Intelligence ("DMI") to secure his release.

Tebyasa testified that he continued his political activity after this incident. In late 2000, he was elected to a task force for an opposition candidate. The incumbent government won the election in 2001. Between 2002 and May 2004, Tebyasa continued his political activities without incident but testified he frequently stayed away from home to avoid arrest and detention. After he fled to the United States in

May 2004, his wife wrote that several men visited their home looking for him, slapped her when she would not say where he was, and demanded that he report to the DMI upon his return. Tebyasa submitted a series of letters from his wife in 2004 recounting this incident and her fear of further harassment. He submitted nothing from his wife corroborating his seizure and detention in June 2000.

The IJ denied asylum, withholding of removal, and relief under the CAT, finding "that because of the conflicts in [Tebyasa's] testimony and the lack of corroborative evidence that [Tebyasa] has failed to establish his burden of proof." The IJ's lengthy opinion cited discrepancies "that go[] to the heart of [Tebyasa's] claim"[1] -- whether his hand and tooth were injured in the scuffle at his home, or were the result of torture inflicted during later interrogation; whether he was stripped naked and dipped in ice water while being questioned; and when his wife was questioned and slapped after his arrival in the United States. The IJ also noted less significant discrepancies, and cited the lack of corroboration of the June 2000 incident by Tebyasa's wife, the lack of other incidents of political harassment, the fact that he was a member of the UYD but not a leader of its political activities, and the time lag in his applying for asylum which suggested that he was not fleeing when he departed.

Tebyasa appealed to the BIA, focusing exclusively on the IJ's findings of significant discrepancies and adverse credibility determination. The BIA affirmed. While acknowledging "the plausible explanations provided on appeal for some of the discrepancies," the BIA concluded:

---

[1]The REAL ID Act of 2005 expressly provided that, in asylum cases, the trier of fact may determine credibility "without regard to whether an inconsistency, inaccuracy or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). However, this provision applies only to asylum applications filed after May 11, 2005. Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305 (2005). Tebyasa filed his asylum application in April 2005.

given the equivocal evidence and contradictory testimony in the record regarding nearly every aspect of the narrative of [Tebyasa's] claim, but particularly the significant discrepancies regarding the time frame and details of [Tebyasa's] purported abduction and his wife's beating - central aspects of the claim - the [IJ] reasonably doubted [Tebyasa's] veracity. . . . Based on the aforementioned equivocal testimonial evidence coupled with the lack of reasonably expected corroborative evidence, the [IJ] reasonably determined that [Tebyasa] failed to meet his burden of proof for relief.

In his petition for review, Tebyasa again focuses exclusively on the IJ's adverse credibility finding. But our deferential review may not be so limited. We must focus on whether the BIA's order, including the IJ's findings and reasoning to the extent expressly adopted by the BIA, are supported by substantial evidence on the administrative record as a whole. Zine, 517 F.3d at 541 & n.4. Here, as the BIA noted, Tebyasa's claim was based on one forcible detention nearly four years before he left Uganda, and on his wife's report of continuing interest in his whereabouts shortly after he departed. Though troubling, these incidents fall short of demonstrable past persecution. "It is a well-established principle that minor beatings and brief detentions, even detentions lasting two or three days, do not amount to political persecution, even if government officials are motivated by political animus." Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004). Thus, the BIA's emphasis on discrepancies in these "central aspects of the claim," combined with the lack of corroboration or other evidence of political harassment or persecution, provide a basis for decision that is well supported by the record. Factual determinations, including adverse credibility findings, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Even if we focused exclusively on the BIA's adverse credibility finding, we would deny the petition for review. Tebyasa attempts to explain the inconsistencies in his testimony and argues that each is minor. However, although individual discrepancies may be "inadequate support for an adverse credibility finding . . . the

-5-

issue is whether their cumulative weight is sufficient to provide a 'specific, cogent reason for disbelief.'" Zine, 517 F.3d at 541. In this regard, as the BIA properly noted, "inconsistencies or omissions that relate to the basis of persecution are not minor but are at 'the heart of the asylum claim.'" Kondakova v. Ashcroft, 383 F.3d 792, 796 (8th Cir. 2004), cert. denied, 543 U.S. 1053 (2005). Here, the numerous inconsistencies, some going to the heart of the claim, provide a specific, cogent reason to disbelieve Tebyasa's claim of persecution. In these circumstances, the adverse credibility finding as articulated by the BIA must be upheld.

"When asylum, withholding of removal and CAT claims are based on the same discredited testimony, the adverse credibility finding is fatal to all three claims." Zine, 517 F.3d at 541. Accordingly, we deny the petition for review as well as the motion to remand.

_____